UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

In re:                                                          Chapter 7

QIAO LIN,                                                        Case No. 14-42344-ess

        Debtor.

---------------------------------------------------------------x

GUO ZHONG WU, RONG ZHENG,                                        Adv. Pro. No.: 14-01111-ess
and WEN DONG LIN,

        Plaintiffs,

    -against-

QIAO LIN,

        Defendant.

---------------------------------------------------------------x


**MEMORANDUM DECISION ON PLAINTIFFS' MOTION
FOR PARTIAL SUMMARY JUDGMENT**


*Appearances*:

Rebecca J. Osborne, Esq.                    Yimin Chen, Esq.
Vladeck, Raskin & Clark, PC                 Law Offices of Chen & Associates
565 Fifth Avenue, 9th Floor                 39-15 Main Street, Suite 502
New York, NY 10017                          Flushing, NY 11354
 *Attorneys for Plaintiffs*                   *Attorneys for Defendant*

**HONORABLE ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

## Introduction

Before the Court is a motion for partial summary judgment by plaintiffs Gu Zhong Wu,

Rong Zheng, and Wen Dong Lin seeking an order finding that the default judgment entered

against the defendant Qiao Lin and others in *Wu v. Glyphs Garden, Inc.*, No. 12-07995

(S.D.N.Y. May 20, 2013) (the "District Court Action"), a case brought by these plaintiffs in the

United States District Court for the Southern District of New York, is nondischargeable under

Bankruptcy Code Section 523(a)(6).  The Plaintiffs argue that there is no genuine dispute as to a

material fact as to each element of their claim based on the record here, and separately, based on

the collateral estoppel effect of the District Court's judgment.

Mr. Lin opposes this motion on grounds that collateral estoppel does not apply here, and

that the Plaintiffs have not established that there is no genuine dispute as to a material fact as to

whether he engaged in "willful" and "malicious" conduct as required by Section 523(a)(6).

## Jurisdiction

This Court has jurisdiction over this adversary proceeding pursuant to Judiciary Code

Sections 157(b)(1) and 1334(b), and the Standing Order of Reference dated August 28, 1986, as

amended by the Order dated December 5, 2012, of the United States District Court for the

Eastern District of New York.  In addition, this Court may adjudicate these claims to final

judgment to the extent that they are core proceedings pursuant to Judiciary Code Section 157(b),

and to the extent that they are not core proceedings, pursuant to Judiciary Code Section 157(c)

because the parties have stated their consent to this Court entering a final judgment.  *See*

*Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1940 (2015) (holding that in a non-core

proceeding, a bankruptcy court may enter final orders "with the consent of all the parties to the proceeding").

## Background

### *The District Court Action and Default Judgment*

On October 26, 2012, the Plaintiffs commenced an action (the "District Court Action") by filing an amended complaint in the District Court against Mr. Lin, as well as Glyphs Garden, d/b/a Saigon Grill, d/b/a/ Saga (the "Restaurant"), Bei Lin, Xin Wei Lin, and Hsiao Tong Chang a/k/a Frank Chang (the "Restaurant Defendants"). In that action, the Plaintiffs asserted violations of the Fair Labor Standards Act of 1938 (the "FLSA"), promulgated and enforced under New York's Minimum Wage Act and Labor Law (the "NY Labor Law"). Neither Mr. Lin nor the other defendants responded to the amended complaint.

On February 8, 2013, the Clerk of the Court entered a Certificate of Default as to Mr. Lin and the other Restaurant Defendants, and a motion for default judgment followed. That motion asserted that Mr. Lin, among others, willfully circumvented minimum wage and overtime laws; willfully falsified pay stubs by reporting incorrect hours worked; willfully failed to post lawfully required notices concerning federal and state minimum wage protections or otherwise to inform the Plaintiffs of those protections; willfully failed to provide the Plaintiffs with notices required under the NY Labor Law; willfully retained portions of the Plaintiffs' tip earnings; and unlawfully dismissed employees Mr. Wu and Mr. Zheng. The Plaintiffs sought entry of a default judgment against all of the Restaurant Defendants, including Mr. Lin.

On April 25, 2013, the District Court held a hearing on the motion for default judgment. None of the Restaurant Defendants appeared or opposed the motion, and on April 26, 2013, the District Court entered an order granting the motion for default judgment. On May 20, 2013, the District Court entered a judgment in the amount of $180,933.65 against the Restaurant

Defendants, jointly and severally, comprised of $125,422 in damages and $55,511.65 in attorneys' fees and costs, pursuant to the FLSA and the NY Labor Law (the "Default Judgment"). Default Judgment, ECF No. 32, *Wu v. Glyphs Garden, Inc.*, No. 12 Civ. 7995 (S.D.N.Y.).

*This Bankruptcy Case*

On May 9, 2014, Mr. Lin filed a petition for relief under Chapter 7 of the Bankruptcy Code. On July 21, 2014, Richard J. McCord, the Chapter 7 Trustee, filed a Report of No Distribution, and on August 11, 2014, Mr. Lin received a discharge.

*This Adversary Proceeding*

On August 11, 2014, the Plaintiffs filed this adversary proceeding seeking a determination that the Default Judgment is nondischargeable pursuant to Sections 523(a)(2) and 523(a)(6). Here, as in the District Court Action, they allege that over the course of their employment at the Restaurant, they regularly worked hours without compensation and were paid less than the minimum wage, all in violation of the FLSA and the NY Labor Law. The Plaintiffs also allege that in July 2011, Mr. Wu and Mr. Zheng complained to Mr. Lin that they were not receiving compensation for hours that they worked in excess of forty per week, and he responded that they would not be compensated for any hours worked in excess of that amount. The Plaintiffs claim that on August 29, 2011, in retaliation for their complaints, Mr. Lin fired Mr. Wu and Mr. Zheng.

The Plaintiffs allege that the Default Judgment should not be discharged in Mr. Lin's bankruptcy case because it arises from their claims that Mr. Lin obtained services from them by violating minimum wage and overtime laws, including by falsifying pay stubs to report an incorrect number of hours that they worked, failing to post notices required by wage and labor

laws, failing to provide Mr. Wu and Mr. Zheng with notices required by the NY Labor Law, and retaining portions of their tip earnings.  They also allege that Mr. Lin undertook each of these actions willfully and maliciously.

On September 10, 2014, Mr. Lin answered the Complaint, and, in substance, denies information sufficient to form a belief as to the allegations.  Mr. Lin also asserts seventeen affirmative defenses, including that the Complaint fails to state a claim upon which relief can be granted, the claims are barred by applicable statute of limitations, and the relief requested is precluded because his conduct was not willful; and as to damages, that the Plaintiffs failed to mitigate their damages, and their damages were *de minimis*.

*This Motion for Partial Summary Judgment*

On July 1, 2016, the Plaintiffs moved for partial summary judgment on their Section 523(a)(6) claim (the "Summary Judgment Motion").  The Plaintiffs argue that Mr. Lin is collaterally estopped from relitigating the elements of this claim, as these issues were previously decided by the District Court.  They state that each of the elements of collateral estoppel is met, namely, that the issues raised here and in the District Court Action are identical, their claims were actually litigated and decided by the District Court, and Mr. Lin was afforded a full and fair opportunity to litigate the District Court Action.  The Plaintiffs acknowledge that there has been a change in interpretation of the New York Wage Theft Prevention Act (the "WTPA") since the District Court entered judgment, but argue that this shift leads only to a modest reduction in the amount of that judgment, and is not "the type of 'significant' change in law that would preclude this Court from applying collateral estoppel."  Plfs' Mem. at 13, ECF No. 48 (quoting *Faulkner v. Nat'l Geographic Enters. Inc.*, 409 F.3d 26, 37 (2d Cir. 2005)).

The Plaintiffs also argue that if this Court finds that collateral estoppel does not apply, they nevertheless should prevail on summary judgment because "there is significant undisputed evidence for this Court to find independently that [Mr. Lin] committed the alleged wage and hour violations." Plfs' Mem. at 14. They state that throughout the course of their employment, they were paid less than minimum wage, and are entitled to the difference. They also argue that they are entitled to overtime wages for their unpaid overtime hours each week. And they seek reimbursement for expenses incurred in connection with their employment, including costs arising from the maintenance of delivery vehicles, as well as "spread of hours" wages under the NY Labor Law, which requires employees to be paid an extra hour for each work day longer than ten hours. And finally, the Plaintiffs seek liquidated damages under the FLSA and NY Labor Law, including damages for Mr. Lin's retaliation in response to their complaints.

And the Plaintiffs contend that the Default Judgment should be found nondischargeable under Section 523(a)(6) because Mr. Lin's violations of the FLSA and NY Labor Law were "willful" and "malicious." Plfs' Mem. at 29. They argue that Mr. Lin's violations were "willful" because he acknowledged that "he knew the minimum wage laws," and that he was aware of these laws because he purchased the Restaurant by signing a $1 million promissory note to satisfy wage and hour violations committed by the previous owner of the Restaurant. *Id*. They state that "[b]y paying [the] Plaintiffs less than they were owed, each deficient paycheck the Restaurant issued to [the] Plaintiffs constituted a deliberate and intentional injury." *Id*. And they also argue that the retaliatory terminations of Mr. Zheng and Mr. Wu "constitute additional deliberate and intentional acts." *Id*.

The Plaintiffs argue that Mr. Lin's violations were "malicious" because "there is significant evidence that [Mr.] Lin engaged in sufficiently reprehensible conduct to find that

5

aggravating circumstances exist." Plfs' Mem. at 31. They argue that Mr. Lin's actions were malicious because "there is ample undisputed evidence that despite knowing his obligations under the minimum wage laws . . . [Mr. Lin] intentionally paid Plaintiffs less than the wage owed and for less time than he knew Plaintiffs had worked [and that Mr.] Lin, who was involved in the management of the Restaurant, knew [its] actions would directly cause monetary injury to Plaintiffs." Plfs' Mem. at 30-31. And the Plaintiffs argue that Mr. Lin acted with malice by "engaging in a course of conduct geared toward intimidating his employees into abandoning their [legal] rights," including posting anti-union posters in the workplace and firing plaintiffs Mr. Zheng and Mr. Wu in retaliation for their protests. Plfs' Mem. at 31.

Mr. Lin opposes summary judgment, and on August 5, 2016, he filed opposition to the Summary Judgment Motion. He responds that collateral estoppel does not apply here because he did not appear or participate in the District Court Action in any way before the Default Judgment was entered. And Mr. Lin argues that collateral estoppel should not apply here because the District Court did not hold evidentiary hearings on the issues.

Mr. Lin contends that the District Court did not make any findings of "willful" or "malicious" conduct, and that even though he nominally owned eighty percent of the Restaurant, he was merely a "straw man" for other individuals who held stock in his name, and that he was not aware of the previous wage and hour suit against the Restaurant. Opp. at 8-9, ECF No. 52. He states that his acts were not malicious because he worked only as a cook at the Restaurant, and because he did not know that the Restaurant's promissory note was in satisfaction of the prior wage and hour suit. And he states that he did not "curse or threat[en] the Plaintiffs to stop their demonstration," or fire them. Opp. at 10.

On August 19, 2016, the Plaintiffs replied.  They argue that Mr. Lin's response "ignores the majority of [the] Plaintiffs' arguments and supporting evidence, [and] rel[ies] improperly on conclusory denials."  Reply at 3, ECF No. 53.  They note that Mr. Lin did not file a statement of disputed facts, and has therefore effectively conceded the facts as set forth in the Plaintiffs' statement of undisputed material facts.  And they argue that collateral estoppel should apply here, because they provide "ample evidence upon which [the District Court] subsequently based its determination," including sworn affidavits, pay stubs, work schedules, and charts.  Reply at 7.  The Plaintiffs also argue that Mr. Lin is an "employer" as defined under the FLSA and the NY Labor Law, as shown by his responsibilities at the Restaurant including supervising employees, hiring and firing employees, maintaining the Restaurant's employment records, and other activities.  Plfs' Reply at 8.  Lastly, the Plaintiffs state that Mr. Lin's actions were "willful" as he had knowledge of the requirements under the FLSA and the NY Labor Law, and "malicious," based on the totality of the circumstances.  Reply at 13.

The Court held conferences on the Summary Judgment Motion from time to time, at which the Plaintiffs and Mr. Lin, each by counsel, appeared and were heard.  The parties attempted to resolve this dispute through mediation, and to that end, the Court entered a Mediation Order on January 25, 2017.  Mediation was unfruitful.  The Court heard argument from counsel on June 30, 2017, and closed the record and reserved decision.

## The Applicable Legal Standards

### *The Elements of a Bankruptcy Code Section 523(a)(6) Claim*

In order to establish that a debt should not be discharged under Section 523(a)(6), a plaintiff must show that the debt at issue resulted from a "willful and malicious injury by the debtor to another entity or to the property of another entity."  11 U.S.C. § 523(a)(6).  That is, a

plaintiff must establish three elements to succeed on a Section 523(a)(6) claim – first, that the

debtor acted willfully, second, that the debtor acted maliciously, and third, that the debtor's

willful and malicious actions caused injury to the plaintiff or the plaintiff's property.  And "to

promote the 'fresh start' policy of the Bankruptcy Code, courts narrowly construe the exceptions

to dischargeability enumerated in § 523(a)(6)."  *Cocoletzi v. Orly (In re Orly),* 2016 WL

4376947, at *3 (Bankr. S.D.N.Y. Aug. 10, 2016).

As to the first element, that the debtor acted willfully, the Bankruptcy Code does not set

forth a definition of "willful."  The Supreme Court has observed that "'willful' in [Section]

523(a)(6) means 'deliberate or intentional.'"  *Kawaauhau v. Geiger*, 523 U.S. 57, 61, n.3 (1998).

*See Navistar Fin. Corp. v. Stelluti (In re Stelluti)*, 94 F.3d 84, 87 (2d Cir. 1996) (same).  The

Supreme Court also noted that the kind of intent necessary in construing this section of the

Bankruptcy Code is similar to that of intentional torts, which "generally require that the actor

intend 'the *consequences* of an act,' not simply 'the act itself.'"  *Restatement (Second) of Torts*

§ 8A, comment *a*, p. 15 (1964) (emphasis added)."  *Kawaauhau*, 523 U.S. at 61-62.  And the

Supreme Court stated that "[a] wilful disregard . . . which necessarily causes injury and is done

intentionally, may be said to be done wilfully and maliciously."  *Tinker v. Colwell*, 193 U.S. 473,

487 (1904).

As to the second element, that the debtor acted maliciously, the Bankruptcy Code

likewise does not set forth a definition of "malicious."  The Second Circuit has concluded that

the term "malicious" in this context means "'wrongful and without just cause or excuse, even in

the absence of personal hatred, spite, or ill-will.'"  *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d

Cir. 2006) (quoting *In re Stelluti*, 94 F.3d at 87).  And "[t]he conduct complained of must be

intended to or necessarily cause injury in order for the debt to be determined nondischargeable."

*Yash Raj Films (USA) v. Ahmed (In re Ahmed)*, 359 B.R. 34, 41 (Bankr. E.D.N.Y. 2005).  In

*Ahmed*, the court concluded that because the finding that the debtor deliberately disregarded

warnings "was necessary to the District Court's judgment, the subsumed finding of malice may

be given preclusive effect."  *In re Ahmed*, 359 B.R. at 43.  In addition, as this Court previously

noted, "[m]alice may also be implied from 'the acts and conduct of the debtor in the context of

[the] surrounding circumstances.'"  *Yash Raj Films (USA) Inc. v. Akhtar (In re Akhtar)*, 368 B.R.

120, 130-31 (Bankr. E.D.N.Y. 2007).  This Court also noted that "a court may find malice 'when

anyone of reasonable intelligence knows that the act in question is contrary to commonly

accepted duties in the ordinary relationships among people, and injurious to another.'"  *Akhtar*,

368 B.R. at 132 (citation omitted).  And malice is not the same as willfulness – as another court

observed, "the terms 'willful' and 'malicious' are separate elements with distinct meanings and

both must be satisfied by a preponderance of the evidence."  *In re Orly*, 2016 WL 4376947, at

\*3.

A key component of a finding of malice for purposes of Section 523(a)(6) is that the

conduct at issue transcends ordinary norms of commercial behavior.  The distinction drawn by

one bankruptcy court decision is instructive.  One bankruptcy court distinguished between the

dischargeability of a judgment for damages, which arose from breach of contract and copyright

and trademark infringement, and dischargeability of a judgment for contempt, which arose from

"the blatant and willful contempt of court orders by the defendants, including the Debtor."

*Bundy Am. Corp. v. Blankfort (In re Blankfort),* 217 B.R. 138, 146 (Bankr. S.D.N.Y. 1998).

As to the former, the court found that where "[t]he Damages Judgment was based solely

upon conduct of the defendants constituting breach of contract and copyright and trademark

infringement, with no evidence of actual malice and no aggravating factor sufficient to deny the

discharge normally granted to the 'honest but unfortunate' debtor," the plaintiffs were not entitled to summary judgment based on collateral estoppel with respect to the element of malice. *In re Blankfort,* 217 B.R. at 146.  The court noted that "[t]he cases in which courts denied requests for non-dischargeability under § 523(a)(6) have as a common theme that persons of honest character could have committed the acts or mistakes which led to legal liability." *In re Blankfort*, 217 B.R. at 144.

But as to the latter, the court reached a different conclusion.  The court observed that "[u]nder the law in this Circuit, the element of malice may be found . . . upon a finding of aggravated, socially reprehensible conduct sufficient to justify an imputation of malice to the debtor," and found that with respect to a separate contempt judgment, "the blatant and willful contempt of court orders by the defendants, including the Debtor, which is binding upon this Court under the doctrine of collateral estoppel, constitutes the type of aggravated misconduct which warrants an imputation of malice within the meaning of section 523(a)(6)." *In re Blankfort,* 217 B.R. at 146.

Whether circumstances are sufficiently aggravating to support a finding of malice is a fact-specific determination made on a case-by-case basis.  *See In re Stelluti* (stating that malice may be implied "by the acts and conduct of the debtor in the context of [the] surrounding circumstances") (internal quotations and citation omitted).  "A court should look to the totality of the circumstances to determine malice." *Forrest v. Bressler (In re Bressler),* 387 B.R. 446, 455 (Bankr. S.D.N.Y. 2008).

As to the third element, that the debtor's actions caused injury to the plaintiff or its property, "[t]he conduct complained of must be intended to or necessarily cause injury in order for the debt to be determined nondischargeable." *In re Ahmed,* 359 B.R. at 41.

Finally, the standard of proof necessary in a Section 523 nondischargeability action is by a preponderance of the evidence. As the Supreme Court stated, "we hold that the standard of proof for the dischargeability exceptions in 11 U.S.C. § 523(a) is the ordinary preponderance-of-the-evidence standard." *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

*The Summary Judgment Standard*

Federal Rule of Civil Procedure 56(c), made applicable to this adversary proceeding by Bankruptcy Rule 7056, provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party has the burden of demonstrating the absence of a genuine dispute as to any material fact, and all of the inferences to be drawn from the underlying facts must be viewed by the court in the light most favorable to the party opposing the motion. *See Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (holding that the court's role is "to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments"). Accordingly, the moving party must demonstrate that there is no genuine dispute as to a material fact as to each element of its claim. If it does not, then summary judgment will be denied. *See Smith v. Goord*, 2008 WL 902184, at *4 (N.D.N.Y. Mar. 31, 2008), *aff'd*, 375 F. App'x 73 (2d Cir. 2010) (citing *Anderson*, 477 U.S. at 250 n.4) (holding that summary judgment should be

denied where the moving party does not show that there is no genuine dispute as to a material fact with respect to each essential element of the claim)).

Once the moving party satisfies its initial burden, "the burden then shifts to the nonmoving party to come forward with evidence sufficient to create a genuine dispute as to a material fact for trial." *Silverman v. United Talmudic Acad. Torah Vyirah, Inc. (In re Allou Distribs., Inc.)*, 446 B.R. 32, 49 (Bankr. E.D.N.Y. 2011). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). *See Anderson*, 477 U.S. at 249-50 (internal citations omitted) (observing that "if the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted")

"Statements in the pleadings alone are not sufficient to meet this burden." *In re Allou Distribs., Inc.*, 446 B.R. at 49. Rather, "[e]stablishing such facts requires going beyond the allegations of the pleadings as the moment has arrived to 'put up or shut up.'" *In re Eugenia VI Venture Holdings, Ltd. Litig.*, 649 F. Supp. 2d 105, 117 (S.D.N.Y. 2008) (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000), *aff'd*, 370 F. App'x 197 (2d Cir. 2010), *cert. denied*, 540 U.S. 811 (2003)). "Unsupported allegations in the pleadings thus cannot create a material issue of fact." *In re Eugenia VI Venture Holdings*, 649 F. Supp. 2d at 117. As the Supreme Court has observed, "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' [and] designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A party "must 'set forth' by affidavit

or other evidence 'specific facts' to survive a motion for summary judgment . . . and must ultimately support any contested facts with evidence adduced at trial." *Bennett v. Spear*, 520 U.S. 154, 168 (1997) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). As one court observed, "[t]he non-moving party may not establish that there is a genuine issue to be resolved at trial through mere allegations or denials of the adverse party's pleadings, but rather must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law." *Beare v. Millington*, 2014 WL 1236750, at *3 (E.D.N.Y. Mar. 25, 2014), *aff'd*, 613 F. App'x 56 (2d Cir. 2015).

Claims that address the defendant's intent, like claims that sound in fraud, raise additional considerations. The Second Circuit noted that "summary judgment is ordinarily inappropriate where an individual's intent and state of mind are implicated. . . . The summary judgment rule would be rendered sterile, however, if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985), *cert. denied*, 474 U.S. 829 (1985). And "'[c]ases in which the underlying issue is one of motivation, intent, or some other subjective fact are particularly inappropriate for summary judgment, as are those in which the issues turn on the credibility of the affiants.'" *Orange Lake Assocs. v. Kirkpatrick*, 825 F. Supp. 1169, 1177 (S.D.N.Y. 1993) (quoting *Conrad v. Delta Air Lines, Inc.*, 494 F.2d 914, 918 (7th Cir. 1974)), *aff'd*, 21 F.3d 1214 (2d Cir. 1994). *See Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015) (stating, in the context of an employment discrimination case based on violations of federal statute, that there is a "need for caution about granting summary judgment to an employer in a discrimination case where . . . the merits turn on a dispute as to the employer's intent.").

"Although summary judgment may be warranted in certain circumstances even when examining state of mind, courts must be cautious in such cases, and, as a result . . . disputes regarding intent are generally decided after a trial/evidentiary hearing resolving such factual issues." *Adler v. Ng (In re Adler)*, 395 B.R. 827, 843 (Bankr. E.D.N.Y. 2015).  Other courts are in accord.  As one court held, "the issue of [a] [d]ebtor's intent in making the representations and taking the actions alleged in the complaint is a material issue which is not subject to adjudication by summary judgment." *Collum v. Redden (In re Redden)*, 234 B.R. 49, 51 (Bankr. D. Del. 1999).

## *The Doctrine of Collateral Estoppel*

Collateral estoppel "bars 'repetitious suits involving the same cause of action' once 'a court of competent jurisdiction has entered a final judgment on the merits.'" *Guggenheim v. Birnbaum (In re Birnbaum)*, 513 B.R. 788, 799-800 (Bankr. E.D.N.Y. 2014) (quoting *NML Capital, Ltd. v. Banco Central de la Republica Argentina,* 652 F.3d 172, 184 (2d Cir. 2011), *cert. denied*, 567 U.S. 944 (2012)).  "A 'judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action.'" *In re Birnbaum*, 513 B.R. at 800 (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n.5 (1979) (citations omitted)).  As the Restatement (Second) of Judgments states:

> When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

*Restatement (Second) of Judgments* § 27 (1982).

The Supreme Court has confirmed that collateral estoppel may be invoked in Section 523 actions.  As the Court noted, "collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)." *Grogan*, 498 U.S. at 284 n.11.  The Supreme Court

also determined that "the ordinary preponderance standard . . . govern[s] the applicability of all the discharge exceptions." *Grogan*, 498 U.S. at 288. As a consequence, the Supreme Court observed, "a bankruptcy court could properly give collateral estoppel effect to those elements of the claim that are identical to the elements required for discharge and which were actually litigated and determined in the prior action." *Grogan*, 498 U.S. at 284. *See Indo-Med Commodities, Inc. v. Wisell (In re Wisell)*, 494 B.R. 23, 29 (Bankr. E.D.N.Y. 2011) (citing *Grogan*). And as the Second Circuit noted, "[b]ankruptcy proceedings may not be used to re-litigate issues already resolved in a court of competent jurisdiction." *Kelleran v. Andrijevic*, 825 F.2d 692, 695 (2d Cir. 1987), *cert. denied*, 484 U.S. 1007 (1988). *See In re Birnbaum*, 513 B.R. at 800 (discussing the collateral estoppel doctrine).

Courts recognize that the application of the collateral estoppel doctrine differs based on the forum in which the first judgment was entered. The Supreme Court has noted that "'[i]t has been held in nondiversity cases since *Erie R. Co. v. Tompkins*, that the federal courts will apply their own rule of res judicata.'" *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 324 n.12 (1971). And as several courts have found, "[when] the issues sought to be precluded were decided by a *federal* court, as in the case at bar, the Bankruptcy Court must apply the theoretically uniform federal common law of collateral estoppel." *FTC v. Wright (In re Wright)*, 187 B.R. 826, 832 (Bankr. D. Conn. 1995). *See Smith v. Entrepreneur Media, Inc. (In re Smith)*, 2009 Bankr. LEXIS 4582 (9th Cir. B.A.P. Dec. 17, 2009), *aff'd*, 465 F. App'x. 707 (9th Cir. 2012) (stating that "[t]he application of issue preclusion to a prior federal judgment is determined by federal law"). *See also In re Birnbaum*, 513 B.R. at 800 (discussing the application of collateral estoppel based on the forum where the first judgment was entered).

Courts similarly recognize that where the issues were decided by a federal court, the application of collateral estoppel may also differ based on whether the matter decided is a claim under federal or state law. That is, the preclusive effect of a prior judgment resolving issues of federal law is governed by the federal standard for collateral estoppel. *Ball*, 451 F.3d at 69. But when a federal court reviews the preclusive effect of state law claims decided by a federal court exercising supplemental jurisdiction over state law claims, that court applies the law of the state in which it sits. As one court observed, "state law rules of preclusion should be applied to state law claims that have been determined by a federal court exercising pendent or supplemental jurisdiction under 28 U.S.C. § 1367 in a federal question case." *Curtis v. Ferrandina (In re Ferrandina)*, 533 B.R. 11, 23 (Bankr. E.D.N.Y. 2015).

When the underlying judgment was entered on default, additional considerations arise. Courts have reached different conclusions on whether a default judgment merits collateral estoppel effect, and for good reasons. On the one hand, it is reasonable to conclude that a plaintiff that has prevailed once – including on default – should not be required to litigate the same issue again in a subsequent action, solely because the defendant elected not to appear in or defend the first action. But on the other, collateral estoppel necessarily curtails and may even deny a defendant the opportunity to have its "day in court" in the second case.

*The Federal Collateral Estoppel Rule*

Several requirements must be met in order for a prior federal judgment to have preclusive effect. As the Second Circuit has observed:

> Federal principles of collateral estoppel, which we apply to establish the preclusive effect of a prior federal judgment, require that "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits."

*Ball*, 451 F.3d at 69 (quoting *Purdy v. Zeldes*, 337 F.3d 253, 258 & n.5 (2d Cir. 2003)).

Many courts acknowledge that under federal law, "the general rule is well-established that default judgments lack issue-preclusive effect." *Mishkin v. Gurian (In re Adler, Coleman Clearing Corp.)*, 205 F. App'x 856, 857 (2d Cir. 2006). Put another way, "The majority view is that collateral estoppel based on default judgments is undesirable." *Artmatic USA Cosmetics v. Maybelline Co.*, 906 F. Supp. 850, 856 (E.D.N.Y. 1995) (citing cases).[1]

As the Second Circuit noted, the "accepted view" is "that the decision of issues not actually litigated, e.g., a default judgment, has no preclusive effect in other litigation." *Abrams v. Interco, Inc.*, 719 F.2d 23, 34 n.9 (2d Cir. 1983). *See Amato v. City of Saratoga Springs*, 170 F.3d 311, 323 (2d Cir. 1999) (Jacobs, J., concurring) (observing that "[o]f course, a default judgment lacks preclusive effect in other litigation.").

Several bankruptcy courts have also addressed this issue. For example, as one bankruptcy court noted, "the general rule under federal law is that default judgments lack preclusive effect." *In re Ferrandina*, 533 B.R. at 23 (citing cases). As another bankruptcy court observed, "[t]he federal rule generally concludes in the case of a default judgment that the issues were not actually litigated and, therefore, preclusive effect should not be given to the earlier default judgment." *Wharton v. Shiver (In re Shiver)*, 396 B.R. 110, 122 (Bankr. S.D.N.Y. 2008).

Courts also recognize exceptions to this general rule. As the Second Circuit noted, "Several other circuits have allowed a default judgment entered as a procedural sanction to be

---

[1] This Court's decision in *Guggenheim v. Birnbaum (In re Birnbaum)*, 513 B.R. 788, 799-800 (Bankr. E.D.N.Y. 2014) is not to the contrary. There, the Court gave collateral estoppel effect to a District Court default judgment on trademark claims that was entered as a sanction for the defendant's conduct during the case. Default judgments entered as a sanction are one of the recognized exceptions to the general rule that "default judgments lack preclusive effect." *Mishkin v. Gurian (In re Adler, Coleman Clearing Corp.)*, 205 F. App'x 856, 857 (2d Cir. 2006).

accorded preclusive effect in a subsequent action if the sanctioned party's abuse of the litigation

process is of sufficiently outrageous severity." *In re Adler, Coleman*, 205 F. App'x at 857 n.1.

And as another court observed, "an exception to this general rule may be found where a

defendant has abused the litigation process." *In re Ferrandina*, 533 B.R. at 23 n.13.

When collateral estoppel is invoked by a plaintiff in the context of a summary judgment

motion, the plaintiff bears the burden on all requirements, except that the party opposing the

application of collateral estoppel bears the burden of "showing that the prior action did not afford

a full and fair opportunity to litigate." *Kulak v. City of New York*, 88 F.3d 63, 72 (2d Cir. 1996).

*See generally In re Birnbaum*, 513 B.R. at 801-02.

Substantial Identity of Issues. The first requirement, that the issues are substantially

identical in the pending and prior proceedings, calls for the court to ascertain:

> [F]irst, whether the issues presented by this litigation are in substance the same as
> those resolved [in the prior litigation]; second, whether controlling facts or legal
> principles have changed significantly since the [prior litigation]; and finally,
> whether other special circumstances warrant an exception to the normal rules of
> preclusion.

*Montana v. United States*, 440 U.S. 147, 155 (1979).

"Direct identity of issues" is not required for collateral estoppel to apply. *In re Ahmed*,

359 B.R. at 40 (citing *Montana,* 440 U.S. at 155). Courts in this Circuit have found that the

issues presented in the two actions need not be absolutely identical, although "the legal standards

governing their resolution [must not be] significantly different." *Cerny v. Rayburn*, 972 F.

Supp.2d 308, 316 (E.D.N.Y. 2013). Rather, "it is sufficient that 'the issues presented in [the

earlier litigation] are *substantially the same* as those presented by [the later] action.'" *Cerny*, 972

F. Supp. 2d at 316-17 (emphasis added, citations omitted).

<u>Actual Litigation and Determination of the Issue.</u>  The second requirement, that the issue

was actually litigated and decided in the prior proceeding, is satisfied where the court "addressed

all the elements of the statute and cited supporting evidence." *Schultz v. United States*, 244 F.

Supp. 3d 307, 311 (N.D.N.Y. 2017).  "The prior decision of the issue need not have been

explicit, however, '[i]f by necessary implication it is contained in that which has been explicitly

decided.'" *Postlewaite v. McGraw-Hill*, 333 F.3d 42, 48 (2d Cir. 1986) (quoting *Norris v.*

*Grosvenor Marketing Ltd.*, 803 F.2d 1281, 1285 (2d Cir. 1986)).

The Second Circuit has recognized that when a judgment is entered on default, it reflects

"the decision of issues not actually litigated . . . [and] has no preclusive effect in other litigation."

*Abrams*, 719 F.2d at 34 n.9.  This is consistent with "the general rule under federal law . . . that

default judgments lack preclusive effect." *In re Ferrandina*, 533 B.R. at 23.  To be sure, there

are exceptions to this rule, including where a defendant has "abused the litigation process." *In re*

*Ferrandina*, 533 B.R. at 23 n.13.  But the exceptions are narrow, and as the Second Circuit has

observed, they lead to "preclusive effect in a subsequent action if the . . . abuse of the litigation

process is of sufficiently outrageous severity." *In re Adler, Coleman*, 205 F. App'x at 857 n.1.

At the same time, a full trial on the merits is not a prerequisite for collateral estoppel to

apply.  Rather, preclusion is appropriate where "[t]he issue [was] raised by the pleadings or

otherwise placed in issue and actually determined in the prior proceeding." *Dolan v. Roth*, 325

F. Supp. 2d 122, 133 (N.D.N.Y. 2004), *rev'd in part on other grounds*, 170 F. App'x 743 (2d

Cir. 2006).

<u>Full and Fair Opportunity To Litigate the Issue.</u>  The third requirement, that the party

against whom collateral estoppel is invoked had a full and fair opportunity to litigate the issue,

calls for the court to determine whether that party "was fully able to raise the same factual or

legal issues" in the prior litigation. *LaFleur v. Whitman*, 300 F.3d 256, 274 (2d Cir. 2002). As distinct from the "actually litigated" element, the requirement that the party opposing collateral estoppel had a full and fair opportunity to litigate the issue requires the court to examine whether the party "was fully able to raise the same factual or legal issues . . . assert[ed in the prior proceeding]." *Id.*

So, for example, the Second Circuit declined to apply principles of collateral estoppel where the defendant was deprived of a fair opportunity to litigate based on, among other considerations, the trial judge's statements that "clearly abrogated his 'responsibility to function as a neutral, impartial arbiter'" and demonstrated "fundamental misunderstanding of the basis" of the defendant's claim. *Ali v. Mukasey*, 529 F.3d 478, 491 (2d Cir. 2008). Similarly, the Seventh Circuit declined to apply collateral estoppel where an immigration judge used language of religious intolerance, stating that it "taints the proceedings, erodes the appearance of fairness and creates substantial uncertainty as to whether the record below was fairly and reliably developed." *Floroiu v. Gonzales*, 481 F.3d 970, 974 (7th Cir. 2007).

<u>Necessity of the Issue To Support the Final Judgment</u>  The fourth and final requirement for collateral estoppel to apply, that the issue previously determined was necessary to support the final judgment, requires the court to consider the elements of the prior claim, and whether a final judgment was entered. This assures that matters that were ancillary to the first determination, and matters that were not finally determined, will not be invoked to bar the consideration of a disputed issue by the second court. As one Court of Appeals noted, "'for purposes of issue preclusion . . . 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect.'" *Wolstein v. Docteroff*

(*In re Docteroff*), 133 F.3d 210, 216 (3d Cir. 1997) (quoting *Restatement (Second) of Judgments*).

<u>New York State's Collateral Estoppel Rule</u>

In New York, "'[t]he doctrine of collateral estoppel precludes a party from relitigating 'an issue which has previously been decided against him in a proceeding in which he had a fair opportunity to fully litigate the point.'" *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 455 (1985) (quoting *Gilberg v. Barbieri*, 53 N.Y.2d 285, 291 (1981)). New York State collateral estoppel law has many similarities to its federal counterpart, with one additional consideration. It "bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006). As then-Judge Sotomayor of the Second Circuit noted, "'[u]nder New York law, collateral estoppel prevents a party from relitigating an issue decided against that party in a prior adjudication . . . . [The additional requirement that] the issue that was raised previously must be decisive of the present action . . . makes New York collateral estoppel law slightly different from federal collateral estoppel law.'" *Farrell v. Burke*, 449 F.3d 470, 482-83 (2d Cir. 2006) (quoting *Curry v. City of Syracuse*, 316 F.3d 324, 331 & n.4 (2d Cir. 2003)).

New York's collateral estoppel rule also accords preclusive effect to default judgments, under the appropriate circumstances. For example, "applying the preclusion law of New York," the Second Circuit gave collateral estoppel effect to a New York state court default judgment because it "resolved all issues necessary to establish nondischargeability," and therefore was "decisive of the present action." *Evans*, 469 F.3d at 281, 283.

<u>Identity of the Issues, Necessity of Determination in the Prior Action, and Decisiveness in the Present Action.</u>  The first requirement of collateral estoppel under New York law is that the identical issue was raised and necessarily decided in the prior action, and also, that the issue is "decisive" in the present one.  As with the federal rule, this calls for a plaintiff to show that there is "an identity between the particular matter in the second action and that presented in the first."  *D'Arata v. N.Y. Cent. Mut. Fire Ins. Co.*, 76 N.Y.2d 659, 666 (1990).  And as with the federal rule, this calls for a plaintiff to show that "the two causes of action have such a measure of identity that a different judgment in the second would destroy or impair rights or interests established by the first."  *Schuylkill Fuel Corp. v. B. & C. Nieberg Realty Corp.*, 250 N.Y. 304, 307 (1929) (Cardozo, Ch. J.)  That is, the plaintiff must establish "that this identical issue was necessarily decided in the first proceeding and is conclusive in the subsequent action."  *D'Arata*, 76 N.Y.2d at 666.  As with the federal standard, this requirement means that New York's collateral estoppel rule assures that a party will not be precluded from addressing issues that were not necessary to the first court's determination – and in addition, the issue must be "decisive" in the present action.

<u>Full and Fair Opportunity To Litigate the Issue.</u>  The second requirement of collateral estoppel under New York law is that "the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action."  *Evans*, 469 F.3d at 281.  That is, the issue must have been "actually litigated," meaning the issue must be "properly raised by the pleadings or otherwise placed in issue and actually determined in the prior proceeding."  *D'Arata*, 76 N.Y.2d at 667.  "Generally, under New York law, 'collateral estoppel effect will only be given to matters actually litigated and determined in a prior action,' because '[i]f an issue has not been litigated, there is no identity of issues.'"  *Evans*, 469 F.3d at 281 (quoting *Kaufman*,

65 N.Y.2d at 456). And "for a question to have been actually litigated, so as to satisfy the [required identity of issues,] it must have been properly raised by the pleadings or otherwise placed in issue and actually determined in the prior proceeding." *Halyalkar v. Bd. of Regents*, 72 N.Y.2d 261, 268 (1988).

The New York rule has been interpreted by the Second Circuit to permit collateral estoppel to be invoked to preclude a party from relitigating an issue determined by a default judgment. As the court concluded in *Evans*, "the state court's default judgment, grounded in a finding of fraud and imposing punitive damages, bars relitigation in bankruptcy court of the fraudulent character of the debt." *Evans*, 469 F.3d at 282.

More recently, courts in the Second Circuit have noted that New York law in this area may be unsettled. *See, e.g., Vyshedsky v. Soliman (In re Soliman)*, 515 B.R. 179, 186 (Bankr. S.D.N.Y. 2014) (observing that "it is unclear whether New York Courts give collateral estoppel effect to default judgments"); *In re Ferrandina*, 533 B.R. at 24 n.14 (stating that "not all courts agree that the Second Circuit properly stated New York's application of issue preclusion arising from a default judgment").

And the burden of establishing the absence of a full and fair opportunity to litigate the issue is on the party against whom collateral estoppel is asserted, not the proponent of the doctrine. As the New York Court of Appeals has observed, "the party seeking the benefit of collateral estoppel has the burden of demonstrating the identity of the issues . . . whereas the party attempting to defeat its application has the burden of establishing the absence of a full and fair opportunity to litigate the issue." *Kaufman*, 65 N.Y.2d at 456. *See D'Arata*, 76 N.Y.2d at 664 (finding that "the burden is on the party attempting to defeat the application of collateral estoppel to establish the absence of a full and fair opportunity to litigate").

*                    *                    *

Here, the Court will consider the application of collateral estoppel based on four criteria

that encompass the requirements of federal and New York collateral estoppel law – whether

there is identity of the issues, whether the issue was actually litigated and determined in the prior

case, whether the defendant had a full and fair opportunity to litigate the issue in the prior case,

and whether determination of the issue was necessary to support the judgment in the prior case.

And as to the collateral estoppel effect of the state law claims, the Court will consider an

additional criterion – whether the issue is "'decisive of'" this action. *Farrell*, 449 F.3d at 483

(quoting *Curry*, 316 F.3d at 331).

## Discussion

The Plaintiffs seek partial summary judgment determining that the Default Judgment is

nondischargeable under Section 523(a)(6). To prevail on their nondischargeability claim under

Section 523(a)(6), the Plaintiffs must show that the Default Judgment debt arose from a "willful"

and "malicious" act which caused injury to them or to their property. 11 U.S.C. § 523(a)(6).

That is, the Plaintiffs must show that there is no genuine dispute as to a material fact that Mr. Lin

acted willfully, that he acted maliciously, and that his acts caused injury to them or to their

property.

The Plaintiffs argue, in substance, that there is no genuine dispute of material fact that

Mr. Lin's violations were "willful" because he acknowledged that "he knew the minimum wage

laws," and that he was aware of these laws because he purchased the Restaurant by signing a $1

million promissory note to satisfy wage and hour violations committed by the previous owner of

the Restaurant. Plfs' Mem. at 29. They state that "[b]y paying [the] Plaintiffs less than they

were owed, each deficient paycheck the Restaurant issued to [the] Plaintiffs constituted a

24

deliberate and intentional injury." Plfs' Mem. at 29. And they also argue that the retaliatory terminations of Mr. Zheng and Mr. Wu "constitute additional deliberate and intentional acts." Plfs' Mem. at 29.

The Plaintiffs also argue that Mr. Lin's violations were "malicious" because "there is significant evidence that [Mr.] Lin engaged in sufficiently reprehensible conduct to find that aggravating circumstances exist." Plfs' Mem. at 31. They argue that Mr. Lin's actions were malicious because "there is ample undisputed evidence that despite knowing his obligations under the minimum wage laws . . . [Mr. Lin] intentionally paid Plaintiffs less than the wage owed and for less time than he knew Plaintiffs had worked [and that Mr.] Lin, who was involved in the management of the Restaurant, knew [its] actions would directly cause monetary injury to Plaintiffs." Plfs' Mem. at 30-31. And the Plaintiffs argue that Mr. Lin acted with malice by "engaging in a course of conduct geared toward intimidating his employees into abandoning their [legal] rights," including posting anti-union posters in the workplace and firing plaintiffs Mr. Zheng and Mr. Wu in retaliation for their protests. Plfs' Mem. at 31.

In the alternative, the Plaintiffs contend that they are entitled to summary judgment because collateral estoppel bars Mr. Lin from relitigating these issues. They argue that each of the requirements of collateral estoppel is met here, because the issues litigated in the District Court Action and in this action are identical, the issues were necessarily decided by the District Court in entering the Default Judgment, the issues were actually litigated in the District Court Action, and Mr. Lin cannot show that he was not afforded a full and fair opportunity to litigate in that action. They also argue that the facts and applicable legal principles have not changed significantly since the entry of the Default Judgment.

Mr. Lin responds that summary judgment is not warranted because his acts were not willful as he was not aware of the wage and hour laws.  Mr. Lin also contends that even though he nominally owned eighty percent of the Restaurant, he was merely a "straw man" for other individuals who held stock in his name, and that he was not aware of the previous wage and hour suit against the Restaurant.  Opp. at 8-9.

Mr. Lin also responds that his acts were not malicious because he worked only as a cook at the Restaurant, and because he did not know that the Restaurant's promissory note was in satisfaction of the prior wage and hour suit.  And he states that he did not "curse or threat[en] the Plaintiffs to stop their demonstration," or fire them.  Opp. at 10.

Mr. Lin asserts that collateral estoppel is not applicable here because he "did not appear or defend himself in the District Court [A]ction."  Opp. at 5.  He argues that "the District [Court] did not have an evidentiary hearing on any issues in the case and granted the default judgment because there was no opposition from any of the defendants."  Opp. at 6.

As noted above, the elements of a Section 523(a)(6) claim are first, that the debt at issue arose from a willful act by the defendant; second, that the defendant's act was malicious; and third, that the defendant's act caused injury to the plaintiffs or their property.  The Court considers these elements in turn.

### _Whether the Plaintiffs Have Established that There Is No Genuine Dispute as to a Material Fact that Mr. Lin Acted Willfully_

The first element of a Section 523(a)(6) claim is that the defendant acted willfully with respect to the debt at issue.  In the context of a Section 523(a)(6) claim, willful means "deliberate or intentional."  _In re Stelluti_, 94 F.3d at 87.  To prevail on this motion, the Plaintiffs must show that there is no genuine dispute as to a material fact that Mr. Lin acted willfully.

The Plaintiffs argue that there is no genuine dispute of material fact that Mr. Lin's violations were "willful" because he acknowledged that "he knew the minimum wage laws," and that he was aware of these laws because he purchased the Restaurant by signing a $1 million promissory note to satisfy wage and hour violations committed by the previous owner of the Restaurant. Plfs' Mem. at 29. They state that "[b]y paying [the] Plaintiffs less than they were owed, each deficient paycheck the Restaurant issued to [the] Plaintiffs constituted a deliberate and intentional injury." *Id*. And they also argue that the retaliatory terminations of Mr. Zheng and Mr. Wu "constitute additional deliberate and intentional acts." *Id*.

Mr. Lin responds that the record here does not establish that acted willfully because he was not aware of the wage and hour laws. Mr. Lin also contends that even though he nominally owned eighty percent of the Restaurant, he was merely a "straw man" for other individuals who held stock in his name, and that he was not aware of the previous wage and hour suit against the Restaurant. Opp. at 8-9.

Here, the record shows that Mr. Lin is an eighty percent shareholder and president of the Restaurant. Osborne Decl., ECF No. 46, Ex. M (Deposition of Qiao Lin) (the "Lin Depo.") 82:17-83:14. But the record also shows that Mr. Lin testified that his day-to-day role in management was limited, and that Mr. Chang, another of the Restaurant Defendants, "was in charge of everything there including giving out the salaries and hiring workers. It was all him." Lin Depo. 65:19-66:6. Mr. Lin further testified that Mr. Chang "was in charge of issuing the check[s] and hiring people. I was never in charge of that." Lin Depo. 82:21-23. And the record shows that Mr. Lin testified that his role at the Restaurant was limited, because he worked only as a cook.

But the record also shows that Mr. Lin testified that new employees were not put on the payroll until after their first month, and that on at least one occasion, while he was working at the Restaurant as a chef, he signed a salary check on one of the Restaurant's accounts for an employee who "did not want to work [there] anymore." Lin Depo. 170:8-174:11. The record also shows that in October 2010, Mr. Lin signed payroll checks made payable to the Plaintiffs, a period that coincided with the first month of their employment at the Restaurant. And the record shows that Mr. Lin testified that he signed some, but not all, of the checks for the Restaurant, that the checks he signed were "usually for electricity, gas, bills, merchandise, nothing else," and that the checks he was given to sign were "not salary." Lin Depo. 135:20-136:17.

That is, there is substantial plausible evidence in the record that supports the conclusion that Mr. Lin acted willfully. But that evidence is not uncontroverted, and Mr. Lin has offered several alternative explanations for these circumstances. While the record here shows that Mr. Lin held – at least nominally – the title of president and owned – at least nominally – an eighty percent interest in the Restaurant, Mr. Lin disputes that he acted in a decision-making or management role at the Restaurant, and argues that the actions at issue were, in substance, taken or controlled by others. The record here also does not establish that Mr. Lin's own acts, as opposed to the acts of others, including the Restaurant Defendants, necessarily caused the Plaintiffs' injuries.

For these reasons, the Plaintiffs have not established that there is no genuine dispute as to a material fact that Mr. Lin acted willfully in connection with the debt at issue.

*Whether the Plaintiffs Have Established that Mr. Lin Is Collaterally Estopped from Contesting the Issue of Whether He Acted Willfully*

The Plaintiffs argue that Mr. Lin is collaterally estopped from contesting the issue of whether he acted willfully because the District Court has already decided this issue, as reflected

in the Default Judgment.  They state that each of the requirements of collateral estoppel is met, because the issues in the District Court Action and this action are identical, the issues were actually litigated and decided in the District Court Action, Mr. Lin was afforded a full and fair opportunity to litigate in the prior action, and the facts and legal principles have not changed significantly since the Default Judgment was rendered.

Mr. Lin responds, in substance, that collateral estoppel does not preclude him from litigating this issue here because he did not appear in or defend the District Court Action.  He states that the District Court did not hold an evidentiary hearing, and that the Judgment was "granted . . . because there were no oppositions from any of the defendants."  Opp. at 6.

In order to show that Mr. Lin is collaterally estopped from contesting that he acted willfully, the Plaintiffs must show that there is identity of the issues, that the issue was actually litigated and determined in the prior case, that Mr. Lin had a full and fair opportunity to litigate the issue in the prior case, and that determination of the issue was necessary to support the judgment in the prior case.  And as to the collateral estoppel effect of the state law claims, the Plaintiffs must also show that the issue is decisive in this action.  The Court will consider these criteria in turn.

Whether the Plaintiffs Have Shown that There Is Identity of the Issues.  The starting point for considering whether collateral estoppel applies to bar relitigation of an issue under both the federal and the state tests is whether there is identity of the issues between the prior case and the present one.  As the Supreme Court has stated, this calls for the court to determine whether "the issues presented by this litigation are in substance the same as those resolved" in the earlier proceeding.  *Montana*, 440 U.S. at 155.

The element of willfulness under Section 523(a)(6) requires proof of "a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau*, 523 U.S. at 61-62. "Negligent or reckless conduct" is not sufficient to meet this standard. *Orly*, 2016 WL 4376947, at *5. Rather, for these purposes, "willful" means a deliberate and intentional injury, or one that "a debtor believes . . . is substantially certain to result from his conduct." *In re Ferrandina*, 533 B.R. at 26.

In the District Court Action, the court imposed liability on Mr. Lin on several grounds arising under federal and state law, including the FLSA and the NY Labor Law. Accordingly, it is necessary to consider the nature of liability under these statutes to determine whether the Default Judgment determined an issue that is substantially identical to the element of willfulness here.

As one court observed in the context of the FLSA, "[a]s for individual liability, 'a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation,' and may be held jointly and severally liable for the FLSA violations." *Chowdhury v. Hamza Exp. Food Corp.*, 2015 WL 5541767, *2 & n.3 (E.D.N.Y. Aug. 21, 2015) (quoting *Moon v. Kwon*, 248 F. Supp. 2d 201, 236-37 (S.D.N.Y. 2002)). Many factors may inform this determination, including "'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled the employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Carter v. Dutchess Cnty. Coll.,* 735 F.2d 8, 12 (2d Cir. 1984) (quoting *Bonnette v. Cal. Health and Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983)).

In order to find that an employer acted "willfully" under the NY Labor Law, an employee must show that the employer "'knowingly, deliberately [or] voluntarily' disregard[ed] its

obligation to pay wages" under the NY Labor Law. *Ayres v. 127 Restaurant Corp.*, 12 F. Supp. 2d 305, 309 (S.D.N.Y. 1998) (quoting *P & L Group, Inc. v. Garfinkel*, 150 A.D.2d 663, 664 (N.Y. App. Div. 2d Dep't 1989)).

Here, the record shows that in the District Court Action, the Plaintiffs alleged that Mr. Lin willfully failed to pay them overtime wages, and also, that he willfully retaliated against Mr. Wu and Mr. Zheng in violation of the FLSA. The record also shows that the Plaintiffs allege that they are entitled to liquidated damages pursuant to the FLSA, which requires that the defendant acted willfully.

In addition, the record shows that the District Court imposed individual liability on Mr. Lin as an employer for these FLSA violations. As described above, the grounds for this liability include that the Defendant played a substantive role in the management of the Restaurant, with some or all of the powers to hire and fire employees, supervise and control their work schedules and conditions of employment, to determine their rate and method of payment, and to maintain their employment records. In addition, "'[e]mployers willfully violate FLSA when (1) they know that their business is subject to FLSA and (2) their practices do not conform to FLSA requirements.'" *Ayres*, 12 F. Supp. 2d at 309 (quoting *Donovan v. Carls Drug Co.*, 703 F.2d 650, 652 (2d Cir. 1983)). These grounds are substantially identical to the grounds that support a finding of willfulness for purposes of Section 523(a)(6).

And similarly, the record shows that individual liability was imposed on Mr. Lin for NY State Labor Law violations, including liquidated damages. Liquidated damages are awarded under NY Labor Law only where a violation is willful. *Ayres*, 12 F. Supp. 2d at 309.

Accordingly, the Plaintiffs have shown that there is identity of the issues with respect to the first element of their Section 523(a)(6) claim, whether Mr. Lin acted willfully.

<u>Whether the Plaintiffs Have Shown that the Issue of Willfulness Was Actually Litigated</u>

<u>and Determined in the District Court Action.</u>  The second consideration in determining whether

collateral estoppel applies is whether the issue was actually litigated and determined in the prior

action.  Under the federal collateral estoppel rule, this requirement is not satisfied in the context

of a default judgment, unless an exception applies.  *Abrams*, 719 F.2d at 34 n.9.  And here, an

exception does not apply because the Default Judgment was entered after Mr. Lin did not

respond in the District Court Action, and not as a sanction or other exception.  But under the

New York collateral estoppel rule, this requirement is met when the issue was "raised by the

pleadings or otherwise placed in issue."  *Evans*, 469 F.3d at 282.

As described above, the issue of Mr. Lin's willfulness for purposes of the Plaintiffs'

Section 523(a)(6) claim is substantially identical to issues that were addressed by the District

Court and determined in the Default Judgment under the Plaintiffs' NY Labor Law claims.  That

is, determination of those claims required the Plaintiffs to "raise[] by their pleadings or otherwise

place[] in issue" the nature of Mr. Lin's conduct, and the District Court's decision amounted to a

determination of that issue in the context of the NY Labor Law claims.

As a consequence, the issue of Mr. Lin's willfulness was "actually litigated," because it

was placed in issue and necessarily determined in the District Court Action, as reflected by the

imposition of liability on the NY Labor Law claims in the Default Judgment.  And by entering

judgment, the District Court was required to find that Mr. Lin acted "knowingly, deliberately and

voluntarily" in disregarding the obligation to pay wages for purposes of NY Labor Law liability.

*Ayres*, 12 F. Supp. 2d at 309.

Accordingly, the Plaintiffs have shown that the issue of whether Mr. Lin acted willfully

was actually litigated and determined in the District Court Action.

<u>Whether Mr. Lin Has Shown that He Did Not Have a Full and Fair Opportunity To</u>

<u>Litigate the Issue of Willfulness in the District Court Action.</u>  The third consideration in

determining whether collateral estoppel applies is whether the defendant had a full and fair

opportunity to litigate the issue in the prior action.  This criterion does not require that a trial

occur, or even that the party against whom collateral estoppel is invoked appeared and defended

the action.  And the burden to establish the absence of a full and fair opportunity to litigate is on

the party opposing collateral estoppel – here, Mr. Lin.

As noted above, the Plaintiffs contend that Mr. Lin cannot meet his burden of showing

that he was not afforded a full and fair opportunity to litigate the issue of willfulness – and all of

the issues determined in the Default Judgment – simply because he chose not to appear or oppose

the District Court Action.  Mr. Lin responds that collateral estoppel is not appropriate because he

"did not appear or defend himself in the District Court Action," and notes that there was no

"evidentiary hearing on any issues in the case."  Opp. at 5-6.

The record shows that Mr. Lin acknowledges that he had some awareness of the

pendency of legal proceedings, and testified that he knew that the Plaintiffs here had filed the

District Court Action, and that he had received papers that were "mail[ed] in my house."  Lin

Depo. 116:8-15.  The record also shows that Mr. Lin was served with copies of the summons and

amended complaint in the District Court Action, the motion for default judgment, the order

scheduling a hearing on that motion, and the judgment itself, but did not respond.  Docket, *Wu v.*

*Glyphs Garden, Inc.*, No. 12 Civ. 7995 (S.D.N.Y.).  Nor did Mr. Lin appeal from the Default

Judgment.  At the same time, Mr. Lin testified that others were addressing legal matters, stating

that "if there was any suit, [Mr. Chang] was the one handling it.  [He] was the one that was

running to the Court and running to the lawyer's office."  Lin Depo. 209:4-7.

Accordingly, Mr. Lin has not shown that he did not have a full and fair opportunity to litigate the issue of willfulness in the District Court Action.

Whether the Plaintiffs Have Shown that Determination of the Issue of Willfulness Was Necessary To Support the Judgment in the District Court Action. The next consideration in determining whether collateral estoppel applies here is whether determination of the issue was necessary to support a final judgment in the prior action. This requirement is satisfied when the issue was necessary to support a valid and final judgment on the merits in the prior case, and it prevents collateral estoppel from being invoked when the prior determination is not final, or the issue was not necessary to that case.

As noted above, the Default Judgment imposes liability on Mr. Lin for the FLSA and the NY Labor Law claims, including liquidated damages. A claim for liquidated damages under the FLSA requires that the conduct at issue was "willful." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988). And similarly, liquidated damages are awarded under NY Labor Law only where a violation is willful. *Ayres*, 12 F. Supp. 2d at 309.

Accordingly, the Plaintiffs have shown that the determination of the issue of willfulness was necessary to support the judgment in the District Court Action.

Whether the Plaintiffs Have Shown that the Issue of Willfulness Is Decisive in this Action. The final requirement for the application of collateral estoppel under New York law is that the issue is decisive in the present action. That is, "[the additional requirement that] the issue that was raised previously must be decisive of the present action . . . makes New York collateral estoppel law slightly different from federal collateral estoppel law." *Farrell*, 449 F.3d at 482-83.

Here, it is plain that the issue of willfulness is decisive in this action, because it is one of the elements of the Plaintiffs' Section 523(a)(6) claim.  As the Bankruptcy Code states, in order to prevail on a claim that a debt is nondischargeable under this section, the debt must result from "a willful and malicious injury by the debtor to another entity or to the property of another entity."  11 U.S.C. § 523(a)(6).

Accordingly, the Plaintiffs have shown that the issue of willfulness is decisive in this action.

*          *          *

In sum, the Plaintiffs have not shown that there is no genuine dispute as to a material fact, based on the record before the Court, as to the first element of their Section 523(a)(6) claim, that Mr. Lin acted willfully.

But the Plaintiffs have shown that the New York requirements of collateral estoppel are met with respect to the issue of whether Mr. Lin acted willfully, because they have shown that there is identity of the issues, that the issue was actually litigated and determined in the District Court Action, that the determination of the issue was necessary to support the Default Judgment, and as to the NY Labor Law claims, that the issue is decisive in this action.  And Mr. Lin has not shown that he did not have a full and fair opportunity to litigate the issue of willfulness in the District Court.

For these reasons, and based on the entire record, the Plaintiffs have established the first element of their Section 523(a)(6) claim, that Mr. Lin acted willfully with respect to the debt at issue.

_Whether the Plaintiffs Have Established that There is No Genuine Dispute as to a Material Fact that Mr. Lin Acted Maliciously_

The second element of a Section 523(a)(6) is that the defendant acted maliciously with respect to the debt at issue.  And in that context, malicious "means wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." *In re Stelluti,* 94 F.3d at 88.  Malice may be constructive or implied, and "[i]mplied malice may be demonstrated by the acts and conduct of the debtor in the context of [the] surrounding circumstances." *Id.*  To prevail on this motion, the Plaintiffs must show that there is no genuine dispute as to a material fact that Mr. Lin acted maliciously.

The Plaintiffs argue that Mr. Lin's actions were malicious because "there is significant evidence that [Mr.] Lin engaged in sufficiently reprehensible conduct to find that aggravating circumstances exist."  Plfs' Mem. at 31.  They argue that Mr. Lin's actions were malicious because "there is ample undisputed evidence that despite knowing his obligations under the minimum wage laws . . . [Mr. Lin] intentionally paid Plaintiffs less than the wage owed and for less time than he knew Plaintiffs had worked [and that Mr.] Lin, who was involved in the management of the Restaurant, knew that [its] actions would directly cause monetary injury to Plaintiffs."  Plfs' Mem. at 30-31.  And the Plaintiffs argue that Mr. Lin acted with malice by "engaging in a course of conduct geared toward intimidating his employees into abandoning their [legal] rights," including posting anti-union posters in the workplace and firing plaintiffs Mr. Zheng and Mr. Wu in retaliation for their protests.  Plfs' Mem. at 31.

The Plaintiffs also argue that Mr. Lin's "response to the Restaurant employees' participation in protected, concerted activities is also indicative of his malicious intent." *Id.*  And the Plaintiffs argue that "the totality of the evidence . . . establishes that [Mr.] Lin . . . 'acted with deliberate intent, in circumstances where it is evident that the conduct will cause injury to the plaintiff and under some aggravating circumstance.'"  Reply at 13 (quoting *In re Blankfort,* 217

B.R. at 144).  According to the Plaintiffs, these circumstances, taken together, are sufficient to satisfy the malice requirement of Section 523(a)(6), and to entitle the Plaintiffs to summary judgment.

Mr. Lin responds that the record here does not show that he acted maliciously because he worked only as a cook at the Restaurant, and because he did not know that the Restaurant's promissory note was in satisfaction of the prior wage and hour suit.  And he states that he did not "curse or threat[en] the Plaintiffs to stop their demonstration," or fire them.  Opp. at 10.

Here, as noted above, the record shows that Mr. Lin was an eighty percent shareholder of the Restaurant, served as president, and was responsible for maintaining the liquor license.  The record also suggests that the Restaurant was purchased by signing a promissory note in satisfaction of a prior wage and hour suit against the Restaurant, and that the firing of Mr. Wu and Mr. Zheng was motivated by the desire to discourage their efforts to organize the Restaurant's employees.  The record also shows that anti-union signs were posted on the premises.

That is, there is substantial plausible evidence in the record that supports the conclusion that Mr. Lin acted maliciously.  This includes evidence showing that Mr. Lin held – at least nominally – the title of president and owned – at least nominally – an eighty percent interest in the Restaurant.  It also includes evidence that Mr. Lin discouraged lawful protest activities in response to certain actions that the Restaurant had taken with respect to its employees.

But that evidence is not uncontroverted, and Mr. Lin has offered several alternative explanations for these circumstances.  The record shows that Mr. Lin testified that his role in the Restaurant was limited, because he worked only as a cook.  As also noted above, the record shows that Mr. Lin testified that "he was the president on paper," but had "[n]o authority in

terms of operating the place." Lin Depo. 82:18-20. And he further testified that his day-to day

role in management was limited, stating that he "only owned a small percentage of the share. I

was unable to run it or make decisions on anything." Lin Depo. 82:14-16. The record also

shows that Mr. Lin testified that Mr. Chang, another of the Restaurant Defendants, "was in

charge of issuing the check[s] and hiring people." Lin Depo. 82:21-23. And the record does not

establish that Mr. Lin's own acts, as opposed to the acts of others, including the Restaurant

Defendants, necessarily caused the Plaintiffs' injuries.

For these reasons, the Plaintiffs have not established that there is no genuine dispute as to

a material fact that Mr. Lin acted maliciously in connection with the debt at issue.

### *Whether the Plaintiffs Have Established that Mr. Lin Is Collaterally Estopped from Contesting the Issue of Whether He Acted Maliciously*

The Plaintiffs argue that Mr. Lin is collaterally estopped from contesting the issue of

whether he acted maliciously because the District Court has already decided this issue, as

reflected in the Default Judgment. Here, as with the element of willfulness, they state that each

of the requirements of collateral estoppel is met, because the issues in the District Court Action

and this action are identical, the issues were actually litigated and decided in the District Court

Action, Mr. Lin was afforded a full and fair opportunity to litigate in the prior action, and the

facts and legal principles have not changed significantly since the Default Judgment was

rendered.

Mr. Lin responds, in substance, as he did in the context of whether he acted willfully, that

collateral estoppel does not preclude him from litigating this issue here because he did not appear

in or defend the District Court Action. He states that the District Court did not hold an

evidentiary hearing, and that the Judgment was "granted . . . because there were no oppositions

from any of the defendants." Opp. at 6.

In order to show that Mr. Lin is collaterally estopped from contesting that he acted maliciously, the Plaintiffs must show that there is identity of the issues, that the issue was actually litigated and determined in the prior case, that Mr. Lin had a full and fair opportunity to litigate the issue in the prior case, and that determination of the issue was necessary to support the judgment in the prior case. And as to the collateral estoppel effect of the state law claims, the Plaintiffs must also show that the issue is decisive in this action. The Court will consider these criteria in turn.

<u>Whether the Plaintiffs Have Shown that There Is Identity of the Issues.</u> Identity of the issues is, as noted above, the starting point for determining whether collateral estoppel applies to bar a party from contesting an issue. Courts agree that direct identity is not required, and substantial identity will suffice. As the Supreme Court observed, relitigation will be barred where "the issues presented by this litigation are in substance the same as those resolved" in the prior case. *Montana,* 440 U.S. at 155.

In the context of a Section 523(a)(6) claim, malice means "'wrongful without just cause or excuse.'" *Ball*, 451 F.3d at 69 (quoting *In re Stelluti*, 94 F.3d at 87). This requires significantly more than a breach of contract or a failure to comply with a known duty. As one bankruptcy court found, "the element of malice may be found . . . upon a finding of aggravated, socially reprehensible conduct." *In re Blankfort*, 201 B.R. at 144. And as that court observed, in those cases where the record shows that "persons of honest character could have committed the acts or mistakes which led to legal liability," the creditor's Section 523(a)(6) claim will fail and the debtor's obligation will be discharged. *Id.*

As another bankruptcy court observed, "malice may be inferred from conduct that has no potential for financial benefit to the debtor such that the debtor's only conceivable motive was

'to inflict harm upon the creditor.'" *In re Orly,* 2016 WL 4376947, at *6 (quoting *Novartis Corp. v. Luppino (In re Luppino)*, 221 B.R. 693, 700 (Bankr. S.D.N.Y. 1998)). For these same reasons, the question of malice is a fact specific determination, and a court's decision should be informed by "the totality of the circumstances." *In re Bressler,* 387 B.R. at 455.

In the District Court Action, the court imposed liability on Mr. Lin on several grounds arising under federal and state law, including the FLSA and the NY Labor Law. Accordingly, it is necessary to consider the nature of liability under these statutes to determine whether the Default Judgment determined an issue that is substantially identical to the element of maliciousness here.

Individual liability under the FLSA may be imposed upon "'a corporate officer with operational control of a corporation's covered enterprise.'" *Moon*, 248 F. Supp. 2d at 236-37 (quoting *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983)). And the fact that a corporate officer "shared or delegated operational control to other[s], or exercised that control infrequently, is of no consequence." *Moon*, 248 F. Supp. 2d at 237. As described above, many considerations have been identified by courts in connection with determining whether a defendant's role in an enterprise rises to the level that subjects him or her to joint and several liability as an employer, including the defendant's substantive role in the management of the business.

But employer liability under the FLSA does not require the kind of "aggravated, socially reprehensible conduct" identified by the court in *In re Blankfort*, or conduct motivated solely by the desire to "inflict harm upon the creditor," as noted by the courts in *In re Orly* and *In re Stelluti*. As the Second Circuit explained, "[a]bove and beyond the plain language . . . the remedial nature of the [FLSA] further warrants an expansive interpretation of its provisions so that they will have 'the widest possible impact in the national economy.'" *Herman v. RSR Sec.*

*Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (quoting *Carter v. Dutchess Comm. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)).

To similar effect, individual liability under the NY Labor Law and the WTPA may be imposed on an employer. And "under the New York Labor Laws . . . an 'employer' [is broadly defined by the] statute . . . as . . . any 'person employing any [employee].'" *Padilla v. Manlapaz*, 643 F. Supp. 2d 302, 314 (E.D.N.Y. 2009) (quoting N.Y. Labor Law § 2(6)). The court noted that "there is general support for giving FLSA and the New York Labor Law consistent interpretations, and courts have interpreted the definition of 'employer' under the New York Labor Law coextensively with the definition used by the FLSA." *Padilla*, 643 F. Supp. 2d at 314. And that liability requires a showing that the employer "'knowingly, deliberately [or] voluntarily' disregards its obligation to pay wages" under the NY Labor Law. *Ayres*, 12 F. Supp. 2d at 309. But an employee is not required to show that the employer disregarded these duties for the sole purpose of inflicting harm. Nor are aggravated circumstances required. That is, "no finding of malice or bad faith . . . is necessary." *Id.*

Accordingly, the Plaintiffs have not shown that there is identity of the issues with respect to the second element of their Section 523(a)(6) claim, whether Mr. Lin acted maliciously

<u>Whether the Plaintiffs Have Shown that the Issue of Maliciousness Was Actually Litigated and Determined in the District Court Action.</u> The second consideration in determining whether collateral estoppel applies is whether the issue was actually litigated and determined in the prior action. Under the federal collateral estoppel rule, this requirement is not satisfied in the context of a default judgment, unless an exception applies. *Abrams*, 719 F.2d at 34 n.9. And here, as noted above, an exception does not apply. But under the New York collateral estoppel

rule, this requirement is met when the issue was "raised by the pleadings or otherwise placed in issue." *Evans*, 469 F.3d at 282.

As described above, the issue of whether Mr. Lin acted maliciously is not substantially identical to an element of the FLSA and the NY Labor Law claims decided in the District Court Action.

As a consequence, the issue of Mr. Lin's maliciousness was not "actually litigated," because it was not placed in issue and necessarily determined in the District Court Action.  Nor was it necessary to the imposition of liability in the Default Judgment.

Accordingly, the Plaintiffs have not shown that the issue of whether Mr. Lin acted maliciously was actually litigated and determined in the District Court Action.

<u>Whether Mr. Lin Has Shown that He Did Not Have a Full and Fair Opportunity To Litigate the Issue of Maliciousness in the District Court Action.</u>  The third consideration in determining whether collateral estoppel applies is whether the defendant had a full and fair opportunity to litigate the issue in the prior action.  As noted above, this does not require that a trial occur, and a party may well have had a full and fair opportunity to litigate even when he elects not to appear or defend an action.

As noted above, the Plaintiffs contend that Mr. Lin cannot meet his burden of showing that he was not afforded a full and fair opportunity to litigate the issue of maliciousness – and all of the issues determined in the Default Judgment – simply because he chose not to appear or oppose the District Court Action.  Mr. Lin responds that collateral estoppel is not appropriate because he "did not appear or defend himself in the District Court Action," and notes that there was no "evidentiary hearing on any issues in the case."  Opp. at 5-6.

As noted above, the record shows that Mr. Lin acknowledges that he had some awareness of the pendency of legal proceedings, and testified that he knew that the Plaintiffs here had filed the District Court Action, and that he had received papers that were "mail[ed] in my house."  Lin Depo. 116:8-15.  The record also shows that Mr. Lin was served with copies of the summons and amended complaint in the District Court Action, the motion for default judgment, the order scheduling a hearing on that motion, and the judgment itself, but did not respond.  Docket, *Wu v. Glyphs Garden, Inc.*, No. 12 Civ. 7995 (S.D.N.Y.).  Nor did Mr. Lin appeal from the Default Judgment.  At the same time, Mr. Lin testified that others were addressing legal matters, stating that "if there was any suit, [Mr. Chang] was the one handling it.  [He] was the one that was running to the Court and running to the lawyer's office."  Lin Depo. 209:4-7.

Accordingly, Mr. Lin has not shown that he did not have a full and fair opportunity to litigate the issue of maliciousness in the District Court Action.

<u>Whether the Plaintiffs Have Shown that Determination of the Issue of Maliciousness Was Necessary To Support the Judgment in the District Court Action.</u>  The next consideration in determining whether collateral estoppel applies here is whether determination of the issue was necessary to support a final judgment in the prior action.

As described above, the issue of whether Mr. Lin acted maliciously is not substantially identical to an element of the FLSA and the NY Labor Law claims decided in the District Court Action.

As a consequence, the issue of Mr. Lin's maliciousness was not necessary to support the judgment in the District Court Action, because it was not placed in issue and necessarily determined in the District Court Action.  Nor was it necessary to the imposition of liability in the Default Judgment.

Accordingly, the Plaintiffs have not shown that the issue of whether Mr. Lin acted maliciously was necessary to support the judgment in the District Court Action.

<u>Whether the Plaintiffs Have Shown that the Issue of Maliciousness Is Decisive in this Action.</u>  The final requirement for the application of collateral estoppel under New York law is that the issue is decisive in the present action.  As noted above, this additional requirement is part of New York collateral estoppel law, and that law is "slightly different from" its federal counterpart.  *Farrell,* 449 F.3d at 482-83.

Here, the record shows that the question of whether Mr. Lin acted maliciously is decisive in this action, because it is one of the elements of the Plaintiffs' Section 523(a)(6) claim.  As the Bankruptcy Code states, in order to prevail on a claim that a debt is nondischargeable under this section, the debt must result from a "willful and malicious injury by the debtor to another entity or to the property of another entity."  11 U.S.C. § 523(a)(6).

Accordingly, the Plaintiffs have shown that the issue of maliciousness is decisive in this action.

*          *          *

In sum, the Plaintiffs have not shown that there is no genuine dispute as to a material fact, based on the record before the Court, as to the second element of their Section 523(a)(6) claim, that Mr. Lin acted maliciously.

And the Plaintiffs have not shown that all of the requirements of collateral estoppel under federal or New York law are met with respect to the issue of whether Mr. Lin acted maliciously, because they have not shown that there is identity of the issues, or that the issue was actually litigated and determined in the District Court Action, or that the determination of the issue was necessary to support the Default Judgment.  As to the NY Labor Law claims, the Plaintiffs have

shown that the issue is decisive in this action. And Mr. Lin has not shown that he did not have a full and fair opportunity to litigate the issue of maliciousness in the District Court.

For these reasons, and based on the entire record, the Plaintiffs have not established the second element of their Section 523(a)(6) claim, that Mr. Lin acted maliciously with respect to the debt at issue.

### *Whether the Plaintiffs Have Established that There Is No Genuine Dispute as to a Material Fact that Mr. Lin's Acts Injured the Plaintiffs or Their Property*

The third element of a Section 523(a)(6) claim is that the defendant's acts caused injury to the plaintiff or its property. 11 U.S.C. § 523(a)(6). To prevail on this motion, the Plaintiffs must show that there is no genuine dispute as to a material fact that Mr. Lin's actions caused injury to the Plaintiffs or to their property.

The Plaintiffs argue, in substance, that there is no genuine dispute as to a material fact that Mr. Lin's acts injured them because Mr. Lin paid the Plaintiffs less than the minimum wage, he failed to notify them of his intention to take tip credit, and he did not pay them for the hours that they worked in excess of forty per week.

Mr. Lin responds that summary judgment should be denied because he worked as a cook, not a manager, and was not responsible for payroll. He also argues that he was not responsible for firing or threatening the Plaintiffs.

Here, again as noted above, the record shows that Mr. Lin was an eighty percent shareholder of the Restaurant, and served as president. The record also shows that the firing of Mr. Wu and Mr. Zheng was motivated by the desire to discourage their efforts to organize the Restaurant's employees. And the record shows that anti-union signs were posted on the premises.

But as also noted above, the record shows that Mr. Lin testified that "he was the president on paper," but had "[n]o authority in terms of operating the place." Lin Depo. 82:18-20. And he further testified that his day-to day role in management was limited, stating that he "only owned a small percentage of the share. I was unable to run it or make decisions on anything." Lin Depo. 82:14-16. The record also shows that Mr. Lin testified that Mr. Chang, another of the Restaurant Defendants, "was in charge of issuing the check[s] and hiring people." Lin Depo. 82:21-23. And the record shows that Mr. Lin testified that his role in the Restaurant was limited, because he worked only as a cook.

That is, there is substantial plausible evidence in the record that supports the conclusion that Mr. Lin's actions caused the Plaintiffs' injuries. This includes evidence showing that Mr. Lin held – at least nominally – the title of president and owned – at least nominally – an eighty percent interest in the Restaurant. It also includes evidence consistent with the conclusion that Mr. Lin wrongfully withheld the Plaintiffs' wages and wrongfully terminated their employment in retaliation for their demands that the Restaurant comply with the NY Labor Law and the FLSA.

But that evidence is not uncontroverted, and Mr. Lin has offered several alternative explanations for these circumstances. As noted, Mr. Lin disputes that he acted in a decision-making or management role at the Restaurant, and argues that the actions at issue were, in substance, taken or controlled by others. He argues that he served merely as a "straw man" for others who owned the shares that were held in his name. Opp. at 9. And the record does not establish that Mr. Lin's own acts, as opposed to the acts of others, including the Restaurant Defendants, necessarily caused the Plaintiffs' injuries.

For these reasons, the Plaintiffs have not established that there is no genuine dispute as to a material fact that Mr. Lin injured the Plaintiffs or their property.

*Whether the Plaintiffs Have Established that Mr. Lin Is Collaterally Estopped from Contesting the Issue of Whether He Injured the Plaintiffs or Their Property.*

The Plaintiffs argue that Mr. Lin is collaterally estopped from contesting the issue of whether he injured the Plaintiffs or their property because the District Court has already decided this issue, as reflected in the Default Judgment. Here, as with the other elements of their Section 523(a)(6) claim, they state that each of the requirements of collateral estoppel is met, because the issues in the District Court Action and this action are identical, the issues were actually litigated and decided in the District Court Action, Mr. Lin was afforded a full and fair opportunity to litigate in the prior action, and the facts and legal principles have not changed significantly since the Default Judgment was rendered.

Mr. Lin responds, in substance, that collateral estoppel does not preclude him from litigating this issue here because he did not appear in or defend the District Court Action. He states that the District Court did not hold an evidentiary hearing, and that the Judgment was "granted . . . because there were no oppositions from any of the defendants." Opp. at 6.

Whether the Plaintiffs Have Shown that There Is Identity of the Issues. Collateral estoppel requires identity of the issues as a threshold matter. As noted above, courts look for substantial identity between the prior proceeding and the present one, because a party should not be required to relitigate a matter that has been necessarily resolved already by a court, following a full and fair opportunity to litigate.

An "injury" for purposes of Section 523(a)(6) may include a monetary injury, including the failure to pay "the statutorily required minimum wage, overtime wages, or spread of hours wages." *In re Orly*, 2016 WL 4376947, at *8. It may also include the failure to reimburse

mandated work-related expenses. *See, e.g., Guan Ming Lin v. Benihana Nat'l Corp.*, 755 F. Supp. 2d 504, 511 (S.D.N.Y. 2010) (noting that both the FLSA and the NY Labor Law require an employer to reimburse the cost of bicycles used in the course of employment).

In the District Court Action, the court imposed liability on Mr. Lin on several grounds arising under federal and state law, including the FLSA and the NY Labor Law. The FLSA requires that a plaintiff show that he or she is entitled to certain wages, and the number of hours for which wages were not received. *Zhong v. August August Corp.*, 498 F. Supp. 2d 625, 629-31 (S.D.N.Y. 2007). *See Brown v. Tomcat Elec. Sec., Inc.*, 2007 WL 2461823, at *2 (E.D.N.Y. 2007) (discussing similarities between FLSA and NY Labor Law). And in the Default Judgment, the Plaintiffs were awarded damages of $125,422, reflecting, among other things, unpaid minimum and overtime wages, and liquidated damages for minimum wages and overtime under the FLSA and the NY Labor Law, and under the NY Labor Law, spread of hours damages, work related expenses, and retaliation damages. Default Judgment, *Wu v. Glyphs Garden, Inc.*, No. 12-07995 (S.D.N.Y.). This amounts to "injury" for purposes of Section 523(a)(6).

Accordingly, the Plaintiffs have shown that there is identity of the issues with respect to the third element of their Section 523(a)(6) claim, whether Mr. Lin injured the Plaintiffs or their property.

<u>Whether the Plaintiffs Have Shown that the Issue of Whether Mr. Lin Injured the Plaintiffs Was Actually Litigated and Determined in the District Court Action.</u> The second consideration in determining whether collateral estoppel applies is whether the issue was actually litigated and determined in the prior action. As noted above, under the federal collateral estoppel rule, this requirement is not satisfied in the context of a default judgment, unless an exception applies. *Abrams*, 719 F.2d at 34 n.9. And as also noted above, an exception does not apply here.

48

But under the New York collateral estoppel rule, this requirement is met when the issue was "raised by the pleadings or otherwise placed in issue." *Evans*, 469 F.3d at 282.

As described above, the issue of whether Mr. Lin's actions caused injury to the Plaintiffs or their property for purposes of Section 523(a)(6) is substantially identical to issues that were addressed by the District Court and determined in the Default Judgment under the Plaintiffs' NY Labor Law claims – specifically, the matter of the Plaintiffs' damages. That is, determination of those claims required the Plaintiffs to "raise[] by their pleadings or otherwise place[] in issue" whether Mr. Lin's conduct caused injury to them, and the District Court's award of damages was a determination of that issue in the context of the NY Labor Law claims.

As a consequence, the issue of whether Mr. Lin's actions injured the Plaintiffs was "actually litigated," because it was placed in issue and necessarily determined in the District Court Action, as reflected by the damages award in the Default Judgment. That award against Mr. Lin necessarily reflects the District Court's determination that the Plaintiffs were injured as a result of Mr. Lin's actions. As with the determination of willfulness, by entering judgment, the District Court was required to find that Mr. Lin acted "knowingly, deliberately and voluntarily" in disregarding the obligation to pay wages for purposes of NY Labor Law liability. *Ayres*, 12 F. Supp. 2d at 309.

Accordingly, the Plaintiffs have shown that the issue of whether Mr. Lin's actions caused injury to the Plaintiffs or their property was actually litigated and determined in the District Court Action.

<u>Whether Mr. Lin Has Shown that He Did Not Have a Full and Fair Opportunity To Litigate the Issue of Whether He Injured the Plaintiffs in the District Court Action.</u>  The third consideration in determining whether collateral estoppel applies is whether the defendant had a

full and fair opportunity to litigate the issue in the prior action. As noted above, this criterion does not require that a trial occur. And the burden to establish the absence of a full and fair opportunity to litigate is on the party opposing collateral estoppel – here, Mr. Lin.

As noted above, the Plaintiffs contend that Mr. Lin cannot meet his burden of showing that he was not afforded a full and fair opportunity to litigate in the District Court Action the issue of whether he injured the Plaintiffs – and all of the issues determined in the Default Judgment – simply because he chose not to appear or oppose the District Court Action. Mr. Lin responds that collateral estoppel is not appropriate because he "did not appear or defend himself in the District Court Action," and notes that there was no "evidentiary hearing on any issues in the case." Opp. at 5-6.

At the same time, the record shows that Mr. Lin acknowledges that he had some awareness of the pendency of legal proceedings, and testified that he knew that the Plaintiffs here had filed the District Court Action, and that he had received papers in the mail at his house. The record also shows that Mr. Lin was served with copies of the summons and amended complaint in the District Court Action, the motion for default judgment, the order scheduling a hearing on that motion, and the judgment itself, but did not respond. Docket, *Wu v. Glyphs Garden, Inc.*, No. 12 Civ. 7995 (S.D.N.Y.). Nor did Mr. Lin appeal from the Default Judgment. In addition, Mr. Lin testified that others were addressing legal matters, stating that "if there was any suit, [Mr. Chang] was the one handling it. [He] was the one that was running to the Court and running to the lawyer's office." Lin Depo. 209:4-7.

Accordingly, Mr. Lin has not shown that he did not have a full and fair opportunity to litigate the issue in the District Court Action of whether his actions caused injury to the Plaintiffs.

<u>Whether the Plaintiffs Have Shown that Determination of Whether Mr. Lin's Actions</u>

<u>Injured the Plaintiffs Was Necessary To Support the Judgment in the District Court Action.</u>  The

next consideration in determining whether collateral estoppel applies here is whether

determination of the issue was necessary to support a final judgment in the prior action.  This

requirement is satisfied when the issue was necessary to support a valid and final judgment on

the merits in the prior case, and it prevents collateral estoppel from being invoked when the prior

determination is not final, or the issue was not necessary to that case.

As noted above, the Default Judgment imposes liability on Mr. Lin for the FLSA and the

NY Labor Law claims, including liquidated damages under both statutes.  These claims required

the Plaintiffs to show that they were denied wages that they were owed, including under the

FLSA and the NY Labor Law, unpaid minimum and overtime wages, and liquidated damages for

minimum wages and overtime, and under the NY Labor Law, spread of hours damages, work

related expenses, and retaliation damages.  Default Judgment, *Wu v. Glyphs Garden, Inc.*, No.

12-07995 (S.D.N.Y.).  As noted, liquidated damages are awarded under NY Labor Law only

where a violation is willful.  *Ayres*, 12 F. Supp. 2d at 309.

Accordingly, the Plaintiffs have shown that the determination of the issue of whether Mr.

Lin caused injury to the Plaintiffs was necessary to support the Default Judgment.

<u>Whether the Plaintiffs Have Shown that the Issue of Whether Mr. Lin Injured the</u>

<u>Plaintiffs Is Decisive in this Action.</u>  The final requirement for the application of collateral

estoppel under New York law is that the issue is decisive in the present action.  That is, "[the

additional requirement that] the issue that was raised previously must be decisive of the present

action . . . makes New York collateral estoppel law slightly different from federal collateral

estoppel law."  *Farrell*, 449 F.3d at 482-83.

Here, the question of whether Mr. Lin's actions caused injury to the Plaintiffs is decisive in this action, because it is one of the elements of the Plaintiffs' Section 523(a)(6) claim. As the Bankruptcy Code states, in order to prevail on a claim that a debt is nondischargeable under this section, the debt must result from "a willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).

Accordingly, the Plaintiffs have shown that the issue of whether Mr. Lin caused injury to the Plaintiffs is decisive in this action.

*          *          *

In sum, the Plaintiffs have not shown that there is no genuine dispute as to a material fact, based on the record before the Court, as to the third element of their Section 523(a)(6) claim, that Mr. Lin's actions injured them.

But the Plaintiffs have shown that the New York requirements of collateral estoppel are met with respect to the issue of whether Mr. Lin's actions injured them, because they have shown that there is identity of the issues, that the issue was actually litigated and determined in the District Court Action, that the determination of the issue was necessary to support the Default Judgment, and as to the NY Labor Law claims, that the issue is decisive in this action. And Mr. Lin has not shown that he did not have a full and fair opportunity to litigate the issue of whether his actions caused injury to the Plaintiffs in the District Court Action.

For these reasons, and based on the entire record, the Plaintiffs have established the third element of their Section 523(a)(6) claim, that Mr. Lin's actions caused injury to them.

## Conclusion

The Plaintiffs have established the first element of their Section 523(a)(6) claim, that Mr. Lin engaged in willful conduct, pursuant to New York's collateral estoppel rule.

The Plaintiffs have also established the third element of their Section 523(a)(6) claim, that Mr. Lin's acts caused injury to them or to their property, again pursuant to New York's collateral estoppel rule.

But the Plaintiffs have not established the second element of their Section 523(a)(6) claim, that Mr. Lin engaged in malicious conduct, because they have not shown that there is no genuine dispute as to a material fact with respect to that element, and they have not shown that the requirements of the federal or New York collateral estoppel rules are met.

For these reasons, and based on the entire record, the Motion for Partial Summary Judgment is denied. An order in accordance with this Memorandum Decision shall be entered simultaneously herewith.



**Dated: Brooklyn, New York**
      **September 28, 2017**

                                  **Elizabeth S. Stong**
                            **United States Bankruptcy Judge**